UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No. 04-373 (AET) |
| v. | : |
| STOP HUNTINGDON ANIMAL CRUELTY USA, INC., KEVIN KJONAAS, a/k/a "Kevin Jonas," a/k/a "Steve Shore," a/k/a "Jim Fareer," LAUREN GAZZOLA, a/k/a "Angela Jackson," a/k/a "Danielle Matthews," JACOB CONROY, JOSHUA HARPER, ANDREW STEPANIAN, and DARIUS FULLMER | : : : : : : : |

Eric Schneider, of full age, being duly sworn, deposes and says:

1. I am an attorney licensed to practice law in the State of New York. I was admitted to the Bar of the State of New York in 1991. I am a graduate of Vassar College University in 1982 and Cardozo School of Law in 1990. My office is in Kingston, New York.

2,. I have tried and litigated animal rights cases since approximately 1993. In 2004 I represented two animal rights activists who were arrested on felony burglary charges for rescuing ducks from a foie gras farm in the Hudson Valley in New York. Although they faced seven years in jail, I worked out a plea to a misdemeanor where they each performed 50 hours of

community service.

3. Because of the aforementioned foie gras case and other successes that I had had on animal rights cases, I was invited to speak at the Animal Rights 2005 convention held in Los Angeles, California in August, 2005. After speaking at the convention, I was approached about providing representation to one of the individuals charged in a federal Indictment in New Jersey. I initially stated that I was not interested. However, I was again approached and ultimately I spoke with Kevin Kjonaas and agreed to represent him. I did so both because I believed myself capable of handling the matter as well as Mr. Kjonaas' explanation to me that he needed someone who was willing to fight for him. Before I agreed to undertake his defense we discussed the amount of work that would be involved in preparing for trial. After much discussion we both agreed that I could do the work and that he wanted me to undertake his defense.

4. Upon being retained I met with the other attorneys in the case, discussed with them what type of discovery had been produced by the Government lawyers and undertook to prepare the defense. I spoke with my client and based upon all that I had learned, I formulated a strategy for his defense.

5. While the discovery was voluminous, after speaking with other attorneys, I realized that only a small fraction of the material was relevant. I focused more on what the Government had chosen as exhibits in order to defend the case.

6. Because there was little or no discovery on many of the witnesses that the Government intended to call, I requested of my client that he provide me with any information he knew about the witnesses. I also asked him to make notes on anything during the trial in case he was aware of facts that would be beneficial to the defense.

7. Because many of the Government witnesses were sympathetic people who told sad stories that seemed to capture the jury's attention, I made the tactical decision with many of them to simply establish that they did not know my client, had never seen my client and then asked no more. This was a tactical decision that not only I used but all of my co-counsel used as well.

8. In light of the Government's case, I informed my client that he could choose to testify in his defense or he could choose not to testify and rely on his right to remain silent and put the Government to its burden. During the week leading up to the defense case, Mr. Kjonaas and I had many conversations about his testifying or not. He was very indecisive about whether he wanted to testify or not, often wavering back and forth. I gave him my input and explained the many pitfalls that testifying would present - including my understanding that the Government had a few good areas of cross-examination that could truly test his credibility. I also explained to him the up-side of testifying as I saw it. Ultimately, though, after giving him my

best advice I informed him that the decision as to whether to testify or not was up to him.

9. Mr. Kjonaas was so torn about his decision on whether or not to testify that he began to solicit the advice of others. This is always a slippery slope because the views vary so widely. One person he consulted was his prior attorney, Isabel McGinty. I had spoken to Ms. McGinty when I got into the case early on and was uneasy with her. She had a vision of the case and it was not my vision, nor was it one I thought particularly wise. Nevertheless, Mr. Kjonaas asked me to speak to Ms. McGinty which I did. At some point, I learned that Ms. McGinty was preparing an outline for Mr. Kjonaas's testimony. I never asked her to prepare any such document and frankly would not think another attorney's outline - especially prepared by a person whose vision of the case differed from mine - would be particularly helpful except for background. The point became moot when approximately two days later she informed me that she did not have the time to fully prepare the outline in any event. As I saw Mr. Kjonaas' testimony as basically telling a story he had repeated over and over again in speeches, as well as the fact the he is a polished speaker, I believed that tactically, a less "produced" and "rehearsed" telling of his story would be best. That is not to say that I was not preparing anything but I believed that the level of preparation Ms. McGinty had in mind would have been counterproductive.  I was fully prepared and

ready to put my client on the witness stand in a manner I thought best had he decided to do so.

10. Ultimately, Mr. Kjonaas decided not to take the witness stand. As I have stated herein, he made that decision after much discussion with me and with a full appreciation from me of his absolute right to testify if he so chose. I am informed that he now claims that he has found fault with my decisions and the he had no faith in my level of preparation. I am sorry that he feels that way because I believe that I provided him with as good a defense as any defendant at that trial received and I was fully ready willing, able and prepared to put him on the witness stand in his own defense if he chose to do so. He chose not to testify.

*Eric Schneider* (signature)
ERIC SCHNEIDER

Sworn to before me this
22nd day of May, 2006

*Kimberly-Anne Fisher* (signature)
Notary Public

KIMBERLY ANNE FISHER
Notary Public, State of New York
No. 01FI5027203
Qualified in Ulster County
My Commission Expires 05/02/10